# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                No. CR 09-0749 JB

THERESA ELLEN ELLIOTT,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum and Request for Downward Departure and Variance, filed April 13, 2010 (Doc. 36); and (ii) the Defendant's Objections to the Amended Presentence Report and Supplement to the Sentencing Memorandum, filed April 21, 2010 (Doc. 40). The Court held a hearing on April 22, 2010. The primary issues are: (i) whether the Court should sustain Defendant Theresa Ellen Elliott's objections to the Presentence Investigation Report, disclosed April 20, 2010 ("PSR"); (ii) whether the Court should grant Elliott's request for a downward departure under United States Sentencing Guidelines ("U.S.S.G.") § 5K2.12 because she acted under coercion and duress; and (iii) whether the Court should grant Elliott a variance to a sentence below the advisory guideline range. The Court will sustain in part Elliott's objection to paragraph 92 of the PSR, deny her request for a downward departure, grant her request for a variance, and sentence Elliott to a term of 24 months in the custody of the Bureau of Prisons.

## FACTUAL BACKGROUND

On February 27, 2009, at approximately 12:10 p.m., a Federal Bureau of Investigation

("FBI") special agent, a Drug Enforcement Administration ("DEA") special agent, and an Amtrak Train Detective were at the Amtrak Train Station in Albuquerque, New Mexico. See PSR ¶ 8, at 3.[1] The agents had reviewed Elliott's passenger record and noted that Elliott was traveling on a one-way ticket from Los Angeles, California, to Cleveland, Ohio. See PSR ¶ 8, at 3. When the train stopped at the Albuquerque station and Elliott exited the train to stand on the platform, the FBI agent approached her, identified himself as a law-enforcement officer, and asked her permission to speak with her. See id. ¶ 9, at 3. Elliott agreed to talk to the agent. See id. Elliott showed the agent her Amtrak ticket and identification card, and explained that she was traveling home to Ohio. See PSR ¶ 8, at 3.

The FBI agent asked Elliott for permission to search her luggage, and Elliott agreed, but demanded that she first be allowed to call her daughter. See id. After her telephone call, Elliott and the agent boarded the train and proceeded to Elliott's compartment. See id. The agent noted that Elliott's compartment smelled strongly of perfume. See id. Elliott's luggage contained women's clothing, but also contained a bottle wrapped in cloth and plastic that gave off a strong odor consistent with liquid phencyclidine ("PCP"). See id. ¶ 9, at 4. At that point, the officers arrested Elliott. See id.

Once the agents and detective returned to the FBI office, they opened the wrapping on the bottle. See PSR ¶ 10, at 4. Inside the wrapping was a 1.75-liter Jose Cuervo tequila bottle containing a yellow liquid that field-tested positive for PCP. See id. According to the DEA, the total net weight of the PCP was 1.47245 kilograms. See id.

---

[1] Although the Court cites to the PSR that the United States Probation Office ("USPO") provided for its recitation of the facts, these facts are also admitted to in Elliott's plea agreement. See Plea Agreement ¶¶ 8-9, at 3-6, filed April 21, 2010 (Doc. 39).

## PROCEDURAL BACKGROUND

On March 26, 2009, a federal Grand Jury indicted Elliott on one count of possessing with intent to distribute PCP.  See Indictment at 1, filed March 26, 2009 (Doc. 12).  On April 21, 2010, Elliott pled guilty to that charge.  See Plea Agreement ¶ 3, at 2.

On April 8, 2010, before she pleaded guilty, Elliott sent a letter to the Court attempting to explain why she committed the crime for which she was charged.  The letter stated, in relevant part:

> I got divorced a few years ago from an abusive man, that I had been with for 10 years.  About six months later, I met a man from out of town, and we started dating. . . .  He was very nice at first[.]  After a few months, the nice guy routine wore off, and he started being physically abusive also.  I started to slowly separate myself from him. . . .  One day last year in February he called me and told me that him and some of his friends were coming to pick me up, to go on a trip.  I told him I did not want to go and that I had school the next day.  [H]e and his friends were already outside my door. . . . I just got in the car and went, because I was afraid of him.  We [then] were on a flight to Arizona.  We all sat separately, which was when I felt something was really wrong about the whole situation.  We arrived in Arizona . . . and then proceeded to drive to California, where they had already purchased two hotel rooms in my name.  He and I went into one of the rooms and I asked him what was going on.  He threw a large roll of money on the bed and told me not to worry about it, the less I knew, the better off I would be.  He and his friends left me at the hotel for most of that day.  The next morning they left again . . . and . . . came back [with] containers of something they called "Wet." . . . I did not know until the Federal Agents told me that the liquid substance was liquid PCP.  He [the man] told me that he was buying a train ticket and wanted me to take the drug from there to Cleveland.  I told him I was not going to do it, and he started yelling and grabbed me, pulled me over to the balcony of our room, which was on the fourth floor, and slapped me.  He then threatened to beat me up and push me off of the balcony and kill me.  They were all standing around me and he told me that they could kill me out there in California and no one could do anything about it, because no one knew me and my kids had no idea where I was at.  I was terrified at this point. . . . I was so scared at this point in time, I just wanted to go home, so I told them to take me to the train station.  I really wish I had contacted authorities when they finally left me, but I was on the train and scared of what they would do to me when I got home.

PSR ¶ 11, at 4-5.  The name of the man to which she refers in her statement is apparently Alton Saunders, Jr.  See PSR ¶ 55, at 17; id. ¶ 92, at 25.  Notwithstanding these alleged circumstances, the USPO calculated Elliott's total offense level at 23 and her criminal history category of I, resulting

in a guideline imprisonment range of 46 to 57 months.  <u>See</u> PSR ¶ 23, at 8; <u>id.</u> ¶ 36, at 13.[2]

On April 13, 2010 -- also before she pled guilty -- Elliott filed a Sentencing Memorandum, requesting a downward departure and a variance.  She first argues that, based on the facts outlined in her letter, she deserves a downward departure under U.S.S.G. § 5K2.12 because her criminal conduct was done under coercion or duress.  <u>See</u> Sentencing Memo. ¶¶ 2-15, at 2-6.  She also requests a variance to a sentence of 24 months, largely based on the same circumstances of coercion that fuel her § 5K2.12 request.  <u>See</u> Sentencing Memo. ¶ 7, at 3; <u>id.</u> ¶ 10, at 4; <u>id.</u> ¶ 16, at 6.  Plaintiff United States of America opposes both of Elliott's requests, and argues that a sentence within the advisory guideline range for one with Elliott's criminal history category and offense level is appropriate.  <u>See</u> United States' Response to Defendant's Sentencing Memorandum at 4, filed April 20, 2010 (Doc. 37).  The PSR states that the USPO can find no information corroborating Mr. Saunders existence or involvement in Elliott's crime, and thus states that the USPO is unable to find grounds for departure under U.S.S.G. § 5K2.12.  <u>See</u> PSR ¶ 92, at 25.

On April 21, 2010, Elliott filed objections to the PSR.  She first alleges that the PSR, "especially in paragraph 92, makes legal and factual errors."  Objections ¶ 1, at 1.  Her primary concern is that the PSR suggests that the USPO does not believe Elliott's coercion story.  <u>See</u> Objections ¶ 2, at 2 ("[T]he claim in Paragraph 92 [of the PSR] that there is no evidence showing 'Mr. Saunders' exists is ludicrous."); <u>id.</u> ¶ 4, at 2 ("The [PSR] fundamentally errs by requiring

---

[2] The base offense level for Elliott's offense is 32.  Elliott's offense level has been reduced significantly by several downward adjustments, such as for her "minor role" as a drug mule and for her acceptance of responsibility.  PSR ¶¶ 15-23, at 7-8.  Her criminal history category is only I, although she has several convictions -- two for passing a bad check, two for driving without a license, two for theft, one for tampering with government records, one for driving with a suspended license, two for disorderly conduct, one for drug abuse and driving while impaired, and one for wrongful entrustment of a motor vehicle.  <u>See</u> PSR ¶¶ 25-35, at 8-13.  The conviction for drug abuse added one point to her criminal history, which places her in criminal history category I.  <u>See</u> <u>id.</u>

corroborating information."); id. ("The [PSR] is in error in requiring a greater standard of proof for downward departures than for upward departures.  Ms. Elliott's word alone is sufficient."); id. ¶ 5, at 5 ("The [PSR] also errs by stating there is no information on the record to support Ms. Elliott's claim.").   She argues that her statements, without more, are sufficient evidence to warrant application of the § 5K2.12 departure and, even if they were not, that there is other evidence corroborating her story and other witnesses to her abusive relationship.  See Objections ¶¶ 3-6, at 2-3.  Elliott asks the Court to disregard the USPO's analysis of her motion for a § 5K2.12 downward departure.  See Objections ¶ 7, at 3.

### RELEVANT LAW OF DOWNWARD DEPARTURES UNDER U.S.S.G. § 5K2.12

U.S.S.G. § 5K2.12 provides:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.  The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.  Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.  Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

U.S.S.G. § 5K2.12.  A court may not depart based on financial or economic coercion or duress.  See United States v. Contreras, 180 F.3d 1204, 1211 (10th Cir. 1999).  Moreover, purely emotional coercion is insufficient to warrant a departure.  See id. at 1211-12.  "To justify a departure, the alleged coercion [or duress] must have caused the defendant to commit the criminal act."  United States v. Gallegos, 129 F.3d 1140, 1145 (10th Cir. 1997).  In determining whether to depart under § 5K2.12, a court may also consider whether the defendant had "a reasonable belief of a current and

-5-

imminent threat." United States v. Burks, 490 F.3d 563, 566 (7th Cir. 2007).  In making its findings regarding a motion for a downward departure under § 5K2.12, a court may hold an evidentiary hearing, see United States v. Enlow, No. CR 06-2364 JB, 2007 WL 5231706, at **2-3 (D.N.M. Aug. 23, 2007)(Browning, J.)(holding an evidentiary hearing at the defendant's request), but is not required to do so, see United States v. Tucker, 298 Fed. Appx. 794, 799 (10th Cir. 2008)(rejecting an argument that the defendant's counsel was ineffective for failing to request an evidentiary hearing on a § 5K2.12 motion because "the district court retains broad discretion regarding evidentiary hearings" and the defendant cited no authority making it an error not to request one); Vigil v. Zavaras, 298 F.3d 935, 943 (10th Cir. 2002)("Generally, the decision to hold an evidentiary hearing is vested in the broad discretion of the district courts, and is reviewed only for an abuse of discretion.")(internal quotes and alterations omitted).

## LAW REGARDING COERCION AND DURESS

A defendant is entitled to an instruction on the affirmative defense of coercion or duress if he or she can demonstrate the following:

> [i] that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

> [ii] that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

> [iii] that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

> [iv] that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

United States v. Butler, 485 F.3d 569, 572 (10th Cir. 2007)(quoting United States v. Vigil, 743 F.2d 751, 755 (10th Cir. 1984))(internal quotations and alterations omitted).  If all four factors are

-6-

established, "the defense is available only so long as all of those factors continue to exist." United

States v. Butler, 485 F.3d at 572.  To satisfy the first element of a coercion or duress defense, the

defendant must show that the imminent danger persisted "throughout the possession." Id. at 573.

To satisfy the third element of a coercion or duress defense, the defendant must demonstrate that he

or she had "no reasonable, legal alternatives to possess[ion] . . . ." Id. at 576.

**RELEVANT LAW REGARDING VARIANCES
FROM THE SENTENCING GUIDELINES**

After United States v. Booker, the sentencing guideline ranges[3] are now advisory and are one

of several factors set out in 18 U.S.C. § 3553(a).  Although appellate courts are allowed to assume

that within-guidelines sentences are reasonable, subject to rebuttal, see Gall v. United States, 552

---

[3] Courts and lawyers often state that the "guidelines" are advisory, see Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]")(emphasis added); United States v. Leroy, 298 Fed. Appx. 711, 712 (10th Cir, 2008) ("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."), but it may be more appropriate to state that it is the sentencing guideline ranges and policy statements in the Guidelines that are advisory. The law still requires sentencing courts to first calculate the proper guideline range, and calculate it correctly. See Nelson v. United States, 129 S. Ct. 890, 891 (2009)("[T]he sentencing court must first calculate the Guidelines range[.]"); Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  After it calculates the appropriate guideline range, the court still must consider the guideline range in its analysis, and weigh it along with the factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3553. See also Nelson v. United States, 129 S. Ct. at 891-92 ("[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)[.]"); Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines[.]"); United States v. Hildreth, 485 F.3d 1120, 1127 (10th Cir. 2007) ("To impose a procedurally reasonable sentence, 'a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a).'")(quoting United States v. Atencio, 476 F.3d 1099, 1102 (10th Cir. 2007)).  The Court is not mandated, however, to apply a sentence within the calculated guideline range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range[.]").

-7-

U.S. at 50-51, the Supreme Court of the United States has made it clear that no presumption of reasonableness attaches at the district court level to the sentence the Guidelines suggest, <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007)("In determining the merits of [the parties'] arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."); <u>Gall v. United States</u>, 552 U.S. at 50 (stating that a sentencing judge "may not presume that the Guidelines range is reasonable").

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3553(a) also directs sentencing courts to consider: (i) the nature of the offense and the defendant's character; (ii) the available sentences; (iii) the Sentencing Guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  <u>See</u> 18 U.S.C. § 3553(a)(1), (3)-(7).

## ANALYSIS

Elliott's total offense level is 23 and her criminal history category is I, resulting in a guideline imprisonment range of 46 to 57 months.  Elliott objects to several statements in the PSR, requests a downward departure pursuant to U.S.S.G. § 5K2.12 because she contends she committed the underlying crimes under coercion or duress, and requests a variance down to a sentence of 24

months.  The United States opposes the variance and downward departure.  Because the Court does

not believe a downward departure is warranted under the facts of this case, the Court will deny the

request for a departure.  The Court will, however, grant Elliott's request for a variance to a sentence

of 24 months.

## I.    THE COURT SUSTAINS IN PART ELLIOTT'S OBJECTION TO THE PSR.

Elliott's objections to the PSR primarily stem from paragraph 92, which indicates that Elliott

gave "limited" information regarding her relationship with Mr. Saunders and that she would need

corroborating information to warrant a departure under § 5K2.12.  The paragraph states:

> When the defendant participated in the presentence interview, she provided limited
> information about her relationship with Alton Saunders, Jr.  The defendant provided
> information about abuse she experienced in other relationships; however, she did not
> provide information about her past with Mr. Saunders.  In the defendant's version,
> she told of the abuse she experienced in this relationship, which later led to Mr.
> Saunders intimidating her to travel with him from Ohio to Arizona, by plane, and
> then drive to California, where she boarded a train with PCP.  There is no
> corroborating information in order to show Mr. Saunders exists or if he was involved
> in the instant crime.  There is no information on record to show the defendant had
> an abusive history with Mr. Saunders.  Without this information, the probation office
> is unable to find grounds for departure based on U.S.S.G. § 5K2.12, Coercion and
> Duress.

PSR ¶ 92, at 25.  At the hearing, the Court discussed this paragraph with Assistant United States

Attorney Rhonda P. Backinoff and John Van Butcher, Elliott's counsel.  See Transcript of Hearing

at 2:25-6:16 (taken April 22, 2010)("Tr.")(Court, Backinoff, Butcher).[4]  The parties ultimately

agreed that replacing the current paragraph 92 with the following language would satisfy Elliott's

objection:

> When the defendant participated in the presentence interview, she provided
> information about her relationship with Alton Saunders, Jr.  The defendant provided

---

[4] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

information about abuse she experienced in other relationships; however, she did not provide information about her past with Mr. Saunders.  In the defendant's version, she told of the abuse she experienced in this relationship, which later led to Mr. Saunders intimidating her to travel with him from Ohio to Arizona, by plane, and then drive to California, where she boarded a train with PCP.  There is no law-enforcement record of complaints made by the defendant about the abusive relationship with Mr. Saunders.  The probation office is unable to find grounds for departure based on U.S.S.G. § 5K2.12, Coercion and Duress.

The Court thus sustains Elliott's objection in part and amends the PSR to include the above language in place of the current paragraph 92.[5]

## II.   THE COURT WILL DENY ELLIOTT'S REQUEST FOR A DOWNWARD DEPARTURE UNDER § 5K2.12.

In her Sentencing Memorandum, Elliott first asks the Court to grant her a downward departure pursuant to U.S.S.G. § 5K2.12, because she committed the crime of conviction under coercion or duress.  The United States appears to oppose the request for a downward departure, although Ms. Backinoff admitted that she has no evidence to refute Elliott's story.  See Tr. at 17:11-13 (Backinoff)("[T]he Court can well consider the idea of coercion and duress, and I have no information to provide the Court to counter that").  Rather, Ms. Backinoff's argument was primarily that her abusive relationship does not warrant a departure under these circumstances, because Elliott should by now know how to extricate herself from such relationships.  See id. ("I would suggest to the Court, though, that she has a history of abusive relationships and . . . at this point in her life she should have been able to know how to extricate herself from this[.]").[6]  Ms. Backinoff also argued

---

[5] Mr. Butcher represented that Elliott had no objections to the PSR other than those addressed with the amendment of paragraph 92.  See Tr. at 7:13-16 (Court, Butcher).

[6] The parties did not request an evidentiary hearing on Elliott's request for a downward departure.  At the sentencing hearing, Mr. Butcher suggested that he put Elliott on the witness stand to testify as to the facts surrounding her commission of the crime, see Tr. at 10:1-9 (Butcher), but Ms. Backinoff asserted that such testimony would be unnecessary and that she would not object to Mr. Butcher merely proffering the testimony that Elliott would give, see id. at 10:10:13-20

against crediting Elliott's story by pointing out Elliott's history of dishonesty.  See id. at 17:17-25 (Backinoff).  Finally, Ms. Backinoff argued that Elliott has received significant "breaks" already in the form of numerous downward adjustments to her offense level, and that adding a downward departure under § 5K2.12 or a variance under 18 U.S.C. § 3553(a) would give her more of a break than she deserves under the facts of this case.  See Tr. at 18:1-14 (Backinoff).

The Court will deny Elliott's request for a departure pursuant to § 5K2.12.  The Court believes that Elliott's allocution provides some evidence of coercion or duress, but the Court does not believe that she has produced evidence demonstrating a "serious" degree of coercion or duress, as § 5K2.12 requires.  U.S.S.G. § 5K2.12 ("If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.").  See United States v. Enlow, 2007 WL 5231706, at *7 ("[T]he Court does not believe that [Enlow] has produced evidence demonstrating a 'serious' degree of coercion or duress as § 5K2.12 requires.").  While the Court acknowledges that Elliott does not have to demonstrate all of the elements of a coercion or duress defense to receive a departure under § 5K2.12, the Court believes that Elliott's imperfect coercion or duress defense is relatively weak.

Elliott's story was that she was in an abusive relationship with Mr. Saunders, but had already begun to separate herself from him when he approached her about traveling with him to California.  She stated that she went with him because she was scared of him.  After flying to Arizona and driving to California, however, Mr. Saunders left Elliott alone in a hotel room for almost two full days, during which time she did not attempt to leave or to contact authorities.  Granted, at that point,

---

(Backinoff).  Mr. Butcher agreed that he would, rather than ask Elliott to testify, have Elliott give her allocution before he made his argument in favor of a downward departure.  See Tr. at 11:23-13:6 (Court, Butcher, Elliott).  Accordingly, Elliott allocuted and then Mr. Butcher made his arguments in support of her requests for a downward departure and variance.

she did not necessarily know that she was going to be asked to transport PCP by train back to Ohio, but she admitted that she realized something was wrong with the situation. Mr. Saunders' primary physical threats did not occur until after he had obtained the PCP -- apparently it took no physical threats to convince Elliott to get on a flight to Arizona with him and his friends. Finally, Mr. Saunders eventually left Elliott at the train station with the PCP and no supervision. Elliott admits that she then had another opportunity to contact the authorities and to come clean with whatever illicit substance she was carrying, but she did not do so. Given the extended periods during which Mr. Saunders left Elliott alone, at which point she could have called the police or otherwise extricated herself from the unlawful conduct, the Court does not believe that Elliott satisfies the third element of a coercion or duress defense -- that she had no reasonable, legal alternatives to transporting the PCP. See United States v. Butler, 485 F.3d at 572, 576. Elliott has not adequately explained to the Court why she did not attempt to contact authorities when she was outside of Mr. Saunders' presence.

Given the intermittent nature of Mr. Saunders contact with Elliott, she had several opportunities to attempt to seek assistance from law-enforcement authorities. See id. at 572 (stating that a coercion or duress defense "is available only so long as all of th[e] factors continue to exist"). Based partly on Elliott's failure to satisfy the third element of a coercion or duress defense, the Court does not believe that Elliott has demonstrated a "direct causal relationship" between her transporting PCP and her avoiding the harms Mr. Saunders allegedly threatened. See United States v. Gallegos, 129 F.3d at 1145 ("To justify a departure, the alleged coercion [or duress] must have caused the defendant to commit the criminal act."). Considering the foregoing, the Court finds that Elliott has not shown that she committed the offense of which she was convicted because of "serious" coercion or duress. U.S.S.G. § 5K2.12 ("If the defendant committed the offense because

of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.").

A downward departure is legally authorized for coercion or duress.  Moreover, Elliott's statement shows that there was some coercive force at work upon her.  The Court, however, takes seriously the requirement that the coercion or duress be "serious," U.S.S.G. § 5K2.12, and believes that, where the defendant had ample opportunity to seek legal intervention between the coercion and the commission of the crime, a downward departure is generally not warranted, see United States v. Enlow, 2007 WL 5231706, at **7-8.  As such, the Court chooses not to depart, because it does not believe that a departure is warranted under the facts and circumstances that have been presented.  Unfortunately, the Court has seen many cases in which defendants choose to become drug couriers, because they are dealing with pressures of some sort.  The Court does not believe that the pressures under which Elliott found herself were significantly different than those pressures that many of the other drug-courier defendants who come before it have faced.  The Court has difficulty distinguishing Elliott's case from the heartland of drug-courier cases that have come before it.  The Court will deny Elliott's request for a downward departure.

## III.   THE COURT WILL GRANT ELLIOTT'S REQUEST FOR A VARIANCE TO A SENTENCE OF 24 MONTHS.

Using essentially the same arguments that underlie her request for a downward departure, Elliott requests a variance to a sentence of 24 months.  The United States opposes this request as well, arguing that a within-guidelines sentence is appropriate under the circumstances of this case.  The Court will grant Elliott's request for a variance and sentence her to a term of 24 months.

Congress has directed sentencing courts to impose a sentence that is "sufficient, but not greater than necessary" to comply with statutorily defined purposes of punishment enumerated in

-13-

18 U.S.C. § 3553(a)(2).  Those purposes are to: (i) reflect the seriousness of the offense; (ii) promote respect for the law; (iii) provide just punishment; (iv) afford adequate deterrence; (v) protect the public; and (vi) provide the defendant with any needed educational or vocational training, medical care, or other correctional treatment.  See 18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3553(a) also directs sentencing courts to consider: (i) the nature of the offense and the defendant's character; (ii) the available sentences; (iii) the Sentencing Guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

The Court notes that Elliott transported approximately 1.4 kilograms of PCP by passenger train.  For sentencing purposes, Elliott's total offense level is 23 and her criminal history category is I, resulting in a guideline imprisonment range of 46 to 57 months.  The Court has carefully considered the guidelines in this case.  In arriving at its sentence, however, the Court has taken account not only of the guidelines, but of other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After careful consideration of the materials in the PSR, Elliott's statement, the briefing of the parties -- both on the objection and on the requests for a downward departure and variance -- and the arguments at the sentencing hearing, the Court does not believe that a punishment in the sentencing guideline range is appropriate for this sort of offense.

The Court has considered the kinds of sentences and ranges that the guidelines establish, and, after careful consideration, the Court believes that Elliott has proposed a sentence that reflects well the factors set forth in 3553(a).  The Court will thus sentence Elliott to 24 months of imprisonment.

-14-

The Court does not think that Elliott's case merits a downward departure for duress and coercion under the guidelines. The Court was, however, struck by Elliott's minor role and her lack of financial interest in the drug transaction. Elliott appears to have been in a very bad situation. Her participation in a bad relationship, however, created part of that situation. Elliott could have done more to extricate herself from the situation, but the Court can also understand why she did not do that. She may not have felt emotionally able to make the decisions necessary to avoid this situation. Thus, having looked at Elliott's statement, the Court was already inclined to vary somewhat from the guideline sentence, and to arrive at a sentence in the neighborhood of 24 months, before it read her Sentencing Memorandum and Objections.

The Court is concerned, however, about Elliott's criminal history. The criminal justice system has not sent Elliott a very consistent message about how seriously it treats some of the offenses of which she was convicted. At the same time, the criminal history category reflects that lack of a serious sentence before this one, so the Court need not emphasize the past criminal history too much in this case.

First, a 24-month sentence in this case reflects the seriousness of Elliott's offense. It is a very serious offense, but this is also a serious sentence. The sentence is sufficient to promote respect for the law, particularly given that the state criminal justice system has not perhaps emphasized that factor with Elliott enough in the past. The Court's sentence provides a more just punishment than a guideline sentence of 46 months would. The Court has some concerns whether a sentence of 24 months provides adequate deterrence, but it is probable that no court can provide adequate deterrence to bad relationships. Nevertheless, the Court finds that this 24-month sentence provides adequate deterrence to the criminal conduct in which Elliott would knowingly engage, and also provides general deterrence. Finally, while playing any role in transporting this amount of PCP is

very serious and creates a danger to the public, Elliott has not demonstrated any violence in her criminal history, and the decision to transport the PCP was not her own.  The Court thus thinks this 24-month sentence is sufficient to protect the public.

While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Martinez-Barragan, 545 F.3d 894, 904-05 (10th Cir. 2008) -- this sentence is more reasonable than one within the guidelines.  The Court agrees with Mr. Butcher that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment set for in the Sentencing Reform Act.  The Court thus sentences Elliott to the custody of the Bureau of Prisons for a term of 24 months.

**IT IS ORDERED** that: (i) Defendant Theresa Ellen Elliott's objection to the Presentence Investigation Report, disclosed April 20, 2010, is sustained in part, and paragraph 92 of the PSR will be amended as set forth above; (ii) the request for a downward departure that Elliott made in her Sentencing Memorandum and Request for Downward Departure and Variance is denied; (iii) the request for a variance that Elliott made in her Sentencing Memorandum is granted; and (iv) Elliott is sentenced to a term of 24 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Rhonda P. Backinoff
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

John Van Butcher
  Assistant Federal Public Defender
Federal Public Defenders Office
Albuquerque, New Mexico

      *Attorney for the Defendant*